UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KAREN A. MOSES,  
    PLAINTIFF

CASE NO. 1:07-CV-407  
(DLOTT, J.)  
(HOGAN, M.J.)

VS.

MICHAEL J. ASTRUE,[1]  
COMMISSIONER OF SOCIAL  
SECURITY,  
    DEFENDANT

## REPORT AND RECOMMENDATION

Plaintiff filed her application for Disability Insurance Benefits and Supplemental Security Income in May, 2004. Her application was denied both initially and upon reconsideration. She then requested and obtained hearings in August and October, 2006 before an Administrative Law Judge in Cincinnati, Ohio. Plaintiff, who was represented by counsel at the hearings, testified, as did Vocational Expert (VE) Kenneth Manges. The ALJ reached an unfavorable decision in December, 2006, following which Plaintiff processed an appeal to the Appeals Council, which denied review in May, 2008. Plaintiff then timely filed her Complaint with this Court in May, 2008, and seeks judicial review of the final decision of the Social Security Administration.

## STATEMENTS OF ERROR

Plaintiff's counsel lists three categories of error he believes the ALJ made in analyzing and deciding his client's case. The first is simply described as "the past relevant work and vocational errors." The text following this terse passage leads us to believe that the specific error Plaintiff is complaining about is the ALJ's conclusion that because of the requirement to stand/walk, lift and stoop, Plaintiff cannot perform her past relevant work as a dog groomer, as

---

[1] On February 12, 2007, Michael J. Astrue became Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d)(1) and the last sentence of 42 U.S.C. §405(g), Michael J. Astrue is automatically substituted as the Defendant in this civil action.

well as any medium work.

The second Statement of Error concerns the weight given to the opinions of Drs. Griffin and Diller, both of whom were treating physicians, versus the weight given to Drs. Freihofner and Starr, paper reviewers.

The third Statement of Error relates to the ALJ's failure to afford full or controlling weight to Plaintiff's subjective statements regarding the level of pain she experienced.

## PLAINTIFF'S TESTIMONY AT THE HEARINGS

Plaintiff testified that she was 49 years of age, 5'8" tall and weighed 170 lbs. She lives in a mobile home in Harrison, Ohio with her husband, Harvey, who is disabled and on Social Security. There are no children. Plaintiff is a high school graduate, having attended Diamond Oaks Vocational School during her last two years in high school. She is right handed. Prior employment was at the drive-in window in fast food restaurants and as a machine operator in a factory.

Plaintiff testified that she takes various prescribed medications, Vicodin, Zoloft, Zocor and Valium. Her current primary care physician is Dr. Phillip Diller, who she sees quarterly. Her former physician, Dr. Griffin, would not accept Medicaid.

Plaintiff described her physical problem as "having a hard time standing for long periods of time." She said: "I have pain in my lower back and it shoots down my right, both legs, but mostly my right leg all the way to my foot and my leg goes numb." She rated her pain on an average day as "about a six" on a ten-point scale and a "ten" on a bad day, which she experiences about three times per week. She felt her pain was worsening since her onset date in August, 2007.

Plaintiff stated that she doesn't nap or cook, but can do dishes, dust and do laundry and shop with the help of her husband. She is able to drive a car once per week for approximately three miles, enjoys a can of beer or two every other day and smokes a pack of cigarettes per day. She has undertaken physical therapy and testified to at least one epidural shot. She wears a back support belt when performing housework.

Plaintiff estimated that she could sit for ½ hour, stand for ½ hour, walk approximately one

block and lift ten pounds. She talked of difficulty climbing stairs, but had no trouble with memory or concentration. Stress leads to diarrhea. She injured her back in August, 2002 while lifting a golden retriever from the floor to a grooming table. She experiences crying spells, lasting a couple of minutes, on a daily basis, but has no trouble sleeping. (Tr. 198-222)

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The first hypothetical, which was ultimately accepted by the ALJ, asked the VE to assume that Plaintiff can sit for six to eight hours, stand/walk for six to eight hours and frequently lift or carry 25 pounds or more. She must avoid repetitive bending, stooping or heavy lifting and should never climb ladders, ropes or steps. The VE responded that Plaintiff could return to her past relevant work as a dog groomer.

The second hypothetical incorporated all the restrictions of the first, but changed the lifting restriction to 10-20 lbs. The VE responded that she could not return to her past relevant work, but could perform the jobs of security guard, food checker, cashier, information or order clerk and assembler, all of which jobs exist in representative numbers in the national economy.

The third hypothetical was an attempt to accommodate Plaintiff's emotional difficulties by including mildly impaired ability to carry out and persist over time, mild restriction of activities of daily living, mild difficulty maintaining social functioning and mild difficulty maintaining concentration, persistence or pace. These restrictions were to be added to the first two hypotheticals containing physical limitations. The VE's opinion was that Plaintiff could perform her past relevant work as a dog groomer.

The last hypothetical asked the VE to assume the accuracy of Plaintiff's testimony regarding her restrictions. The VE acknowledged that competitive employment would be precluded. (Tr. 222-229).

Cross-examination of the VE brought out that a sit-stand option would prevent work as a security guard and a standing restriction for more than two hours would prevent work as an assembler. (Tr. 229-230).

3

## THE DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff had lumbar and degenerative changes and that her condition was severe. The ALJ found that Plaintiff's impairments met no Listing, and that she had the residual functional capacity to lift/carry 25 lbs. frequently and 50 lbs. occasionally. She could stand/walk for 6 hours in a workday and sit for 5 hours in a workday. She should never climb ladders, ropes or scaffolds, and never engage in repetitive bending, stooping or lifting heavy objects. The ALJ found that Plaintiff had the ability to return to her job as a dog groomer.

## THE MEDICAL RECORD

Plaintiff was seen by Reed Moeller, D.C., a chiropractor, on two occasions in January, 2003 and again in May, 2004. Dr. Moeller reported that Plaintiff had low back pain radiating down the left leg in early 2003 and then radiating down both legs in May, 2004. Dr. Moeller stated that Plaintiff had bilateral muscle spasm, limited range of motion in the spine and limited use of her legs. She walked with a slight limp and was taking pain medication. Dr. Moeller indicated that Plaintiff failed to follow through with recommended treatment. (Tr. 98).

George Griffin, M.D. reported in July, 2001 that Plaintiff had a lumbar herniated disc resulting in a constant dull aching in her back and right leg. He prescribed Neurontin and Lortab and indicated that Plaintiff should not engage in repetitive bending, stooping or heavy lifting. Dr. Griffin reported that Plaintiff sustained the injury to her back while lifting a heavy dog and that the source of pain was the L5 nerve root distribution. Prolonged sitting, standing and walking aggravates the pain. Sensation and muscle strength were normal. There was no vertebral tenderness and no paraspinal muscle tenderness or muscle spasm. Straight leg raising was negative and Plaintiff was able to walk heel to toe. An MRI showed "significant facetal hypertrophy and ligamentous thickening as well as some mild disc bulging at the L4-5 level. There is a fairly high grade level stenosis visible at that point. The patient also has a left paracentral L5-S1 disc herniation with an annular tear and facetal hypertrophy."

Dr. Griffin recommended a course of epidural steroids and spinal surgery if the injections

were not successful. Dr. Griffin opined that Plaintiff was unable to work and advised her not to drive. Plaintiff rated her pain at a level of "5" with medication and "8" without. (Tr. 100-104).

An MRI of the lumbar spine in March, 2004 resulted in the following findings: "(1) Small left paracentral herniation at L5-S1 displacing the left S1 nerve to a mild degree. There is an annular tear at this level; (2) Facet hypertrophy at L3-4, L4-5 and L5-S1; (3) Anterolisthesis of L4 on L5 with diffuse disc bulge and facet hypertrophy, and (4) Diffuse disc bulge at L1-2. No neural compression is present at this level." (Tr. 108-109).

In September, 2004, Plaintiff received an epidural injection of Kenalog and Sensorcaine at L3-L4 by Lawrence Zeff, M.D. (Tr. 114). One month later, Plaintiff declined a second injection after reporting only a 20% improvement. (Tr. 116).

A residual functional capacity assessment was done in February, 2004 by Anton Friehofner, M.D. Dr. Friehofner found that Plaintiff could lift 50 lbs. occasionally and 25 lbs. frequently. She could stand/walk for 6 hours in a workday and sit for 6 hours in a workday. She should never climb ladders, ropes or scaffolds, but could occasionally balance, stoop, kneel, crouch and crawl. Jon Starr, M.D. concurred with Dr. Friehofner's opinions. (Tr. 117-120).

A psychological examination was done in October, 2004 by David Chiappone, Ph.D. Plaintiff reported being on anti-depressant medication since 1997 when she was divorced from her first husband, who abandoned her after a 13-year marriage. Plaintiff reported decreased energy, broken sleep, crying spells, anxiety attacks and feelings of hopelessness. She had a history of alcohol abuse, but continues to drink. Dr. Chiappone's opinion was that Plaintiff could "understand and remember simple instructions, could maintain attention and concentration and relate to co-workers, supervisors and the public. She is mildly impaired in her ability to carry out and persist over time due to some depression. She has mildly reduced stress tolerance." GAF is 58. She was diagnosed with alcohol abuse and dysthymia. (Tr. 121-124).

A psychiatric evaluation was made in December, 2004 by Alice Chambly, Psy.D. Dr. Chambly agreed that Plaintiff suffered from dysthymia and alcohol abuse and also agreed that neither should be classified as severe. Dr. Chambly felt that Plaintiff had mild limitations of her ability to participate in the activities of daily living, maintain social functioning, and maintain concentration, persistence or pace. She was not currently on anti-depressants and had never been

5

hospitalized for psychiatric difficulties, nor was she suicidal. She was cooperative and polite and not currently seeing any mental health professional. (Tr. 125-138).

Dr. Griffin's opinion was that Plaintiff was totally disabled from January, 2005 to January, 2006. (Tr. 139; 152). Dr. Griffin also opined that Plaintiff was totally disabled from January, 2004 to April, 2005. (Tr. 153). Medical records from Dr. Griffin for the period from November, 2004 to August, 2005 show that Plaintiff initially complained of intermittent and dull aching in her back and occasionally both legs. She walked with a mild antalgic gait. Her pain level was an "8" without medication and a "3" with medication. She was sleeping 8 hours per night. Lortab and Gabitril were prescribed. By February, 2005, Plaintiff was sleeping though the night and her pain intensity had improved. She was able to garden. In June, 2005, Dr. Griffin prescribed Vicodin and Celebrex for pain control. She was advised to exercise three times per week for 30 minutes each session. In July, 2005, Plaintiff's gait was normal. In September, 2005, Dr. Griffin recommended a course of physical therapy. (Tr. 155-170).

Physical therapy was commenced in August, 2005. The initial evaluation led the physical therapist to conclude that Plaintiff's potential for rehabilitation was "good." She completed therapy by physical therapist, Leslie Powell, at Mercy Health Partners in mid-September, 2005 and in October, 2005, Dr. Griffin prescribed a sacroiliac belt. (Tr. 171-176).

The last item of medical evidence in Plaintiff's medical record is residual functional capacity assessment completed by Phillip Diller, M.D., whose records indicate that he saw Plaintiff on three occasions, September 17, 2005, October 14, 2005 and January 6, 2006. Dr. Diller opined that Plaintiff could lift no more than 5 lbs. and could stand/walk for 15 minutes at a time before needing to shift positions. He expressed no opinion relative to Plaintiff's ability to sit, but said that she periodically needed to shift weight. Dr. Diller felt that Plaintiff could frequently balance and crouch, occasionally stoop, but never climb, kneel or crawl. Dr. Diller said that his opinions were based on his observations of Plaintiff's posture. (Tr. 141-142; 178-181).

**OPINION**

The following principles of law control resolution of the issues raised in this case. Judicial

review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

    To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(I), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

    To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

    Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe

7

impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

Plaintiff may establish a prima facie case of disability by showing an inability to perform relevant previous employment. If plaintiff retains the residual functional capacity to perform the

8

physical and mental requirements of work performed in the past, plaintiff is not disabled. 20 C.F.R. § 404.1520(e).

Plaintiff must prove an inability to return to his or her former type of work and not just to his or her particular former job. *Studaway v. Secretary of H.H.S.*, 815 F.2d 1074, 1076 (6th Cir. 1987) (citing *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986)); *see Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981). "Former type" of work means the general kind of work, i.e., janitorial work, that plaintiff used to perform. *Studaway*, 815 F.2d at 1076; *Jock*, 651 F.2d at 135.

"Work experience" is one of several vocational factors that may be considered when the issue of disability cannot be determined from the medical evidence alone. 20 C.F.R. § 404.1560(b). "Work experience" means skills and abilities plaintiff has acquired through previous work and which shows the type of work plaintiff is capable of performing. 20 C.F.R. § 404.1565(a). Work experience is relevant when it was performed within the last 15 years, lasted long enough for plaintiff to learn to do it, and was substantial gainful activity. *Id.* If plaintiff has no work experience or has only worked "off-and-on" or for brief periods of time during the 15-year period, this activity will not generally be considered past relevant work. *Id.*

The grid is designed for use when the alleged impairment manifests itself through limitations in meeting the strength requirements of jobs. 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). If plaintiff suffers solely from nonexertional impairments, the grid is inapplicable and the Commissioner must rely on other evidence to rebut plaintiff's prima facie case of disability. *Id.*, § 200.00(e)(1). Nonexertional impairments include "certain mental, sensory, [and] skin impairments" as well as "postural and manipulative limitations [and] environmental restrictions." 20 C.F.R. Subpart P, Appendix 2, § 200.00(e). Where a plaintiff suffers from an impairment or a combination of impairments that results in both exertional and nonexertional limitations, the grid is consulted to see if a finding of disability is directed based upon the strength limitations alone. If not, the grid is then used as a framework and the Commissioner examines whether the nonexertional limitations further diminish plaintiff's work capability and preclude any types of jobs. *Id.*, § 200.00(e)(2). If an individual suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Commissioner may use the grid as a framework for a decision, but must rely on other evidence

9

to carry his burden. *Abbott v. Sullivan*, 905 F.2d 918, 926-27 (6th Cir. 1990); *Damron v. Secretary of H.H.S.*, 778 F.2d 279, 282 (6th Cir. 1985); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528-29 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). The existence of a minor nonexertional impairment is insufficient to preclude use of the grid for directing a decision. Rather, plaintiff must demonstrate that the nonexertional impairment "significantly limits" his ability to do a full range of work at the appropriate exertional level in order to preclude a grid based decision. *Atterberry v. Secretary of H.H.S.*, 871 F.2d 567, 572 (6th Cir. 1989); *Cole v. Secretary of H.H.S.*, 820 F.2d 768, 771-72 (6th Cir. 1987); *Kimbrough v. Secretary of H.H.S.*, 801 F.2d 794, 796 (6th Cir. 1986).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley v. Secretary of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369

10

(6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). However, a summary by

11

an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. *Cornett v. Califano*, No. C-1-78-433 (S.D. Ohio Feb. 7, 1979) (LEXIS, Genfed library, Dist. file). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). However, a physician's statement that plaintiff is disabled is not determinative of the ultimate issue. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walter v. Commissioner*, 127 F.3d 525, 529 (6th Cir. 1997); *Shelman*, 821 F.2d at 321.

It is the Commissioner's function to resolve conflicts in the medical evidence and to determine issues of credibility. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The Commissioner's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990). The Commissioner must state not only the evidence considered which supports the conclusion but must also give some indication of the evidence rejected in order to facilitate meaningful judicial review. *Hurst v. Secretary of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985). *See also Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits

granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

Plaintiff's first Statement of Error faults the ALJ for her conclusion that Plaintiff could perform her past relevant work as a dog groomer. The Disability Report, a Social Security Administration form, requested information about Plaintiff's work as a dog groomer. Plaintiff indicated that the job required her to stand for 6 hours, walk for 2 hours, frequently stoop and, in addition, lift and carry dogs weighing up to 25 pounds frequently and dogs weighing up to 100 pounds occasionally. Lifting was from the floor to a grooming table and was an activity which was repeated from 5 to 7 times per day. (Tr. 64; 71). Plaintiff testified that she injured her back while lifting a golden retriever, assumed to weigh more than 50 lbs., but less than 100 lbs. The

13

VE's opinion was that Plaintiff could return to her job as a dog groomer, but his opinion was limited to the parameters listed by the ALJ in her hypothetical question. In other words, the ALJ had to take as true that Plaintiff had the capacity to frequently lift 25 lbs *or more*. We understand Plaintiff's argument that the job *as performed by Plaintiff* required her to lift dogs weighing more than 50 lbs.

The ALJ, however, effectively cured the poorly worded hypothetical by making reference to The Dictionary of Occupational Titles, § 418.674-010 under the title of *Dog Groomer*, which section has an exertional level of medium. Medium work assumes the capacity to lift 25 lbs. frequently and 50 lbs. occasionally. Therefore, the VE's answer, upon which the ALJ relied, was that Plaintiff could return to the job of dog groomer *as that job is usually performed* in the national economy. There was no error unless it was in the ALJ's assessment that Plaintiff could perform medium work, which is the next topic of discussion.

Plaintiff's second Statement of Error is that the ALJ gave undue weight to the paper reviewers, Drs. Friehofner and Starr and insufficient weight to the opinion of Drs. Griffin and Diller, both treating physicians. Dr. Friehofner's opinion was that Plaintiff could frequently lift 25 lbs. and occasionally lift 50 lbs. Dr. Friehofner also opined that Plaintiff could stand for 6 hours in a workday. Dr. Griffin, a treating physician, was much more general. Dr. Griffin opined that Plaintiff should avoid prolonged standing, stooping and bending and should avoid heavy lifting. Any patient with a disc problem would know as much as these are common sense restrictions. Dr. Griffin does not define what he means by "prolonged" and "heavy," but what he probably meant to communicate to his patient was to avoid doing anything which produces pain. Dr. Diller, who saw Plaintiff only three times, stated that Plaintiff could occasionally stoop, but should lift no more than 5 lbs. The ALJ rejected the extreme position of Dr. Diller in light of objective criteria in Plaintiff's medical record, such as a normal gait, normal muscle strength, the absence of sensory loss, negative straight leg raising, the ability to walk heel to toe, as well as her ability to drive and shop. When faced with the general view of Dr. Griffin as opposed to the specific information provided by Drs. Friehofner and Starr, the ALJ chose to follow the specific. In doing so, he committed no error.

Plaintiff's last and by far her weakest Statement of Error was that the ALJ should have

afforded more weight to Plaintiff's subjective reports of pain. Plaintiff's doctors treated her conservatively. She was advised to exercise and stop smoking. She completed a course of physical therapy and was prescribed less powerful pain medications as she progressed in treatment. Her pain levels steadily decreased and her ability to sleep without interruptions increased. She had one steroidal injection, but declined the second. No surgery was ever performed, nor was Plaintiff ever hospitalized for her back condition. The herniated disc and annular tear were shown on the MRIs to be the source of Plaintiff's pain. The ALJ did not discount Plaintiff's subjective reports of pain, nor could she, but the ALJ did not believe that the medical record as a whole supported Plaintiff's subjective reports of disabling pain. There was no error.

## CONCLUSION

Substantial evidence supports the ALJ's decision in this case. Plaintiff cannot return to her past relevant work as she performed it as a self-employed dog groomer. However, she has the residual functional capacity to perform the job of dog groomer, as it is typically performed in the national economy according to the Dictionary of Occupational Titles, § 418:674-010. For the foregoing reasons, Plaintiff's assignments of error are without merit. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be AFFIRMED and this case be dismissed from the docket of the this Court.

August 29, 2008

Timothy S. Hogan
United States Magistrate Judge

15

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).